The Honorable, the Judge of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons who have no manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. Godspeed to the United States and its Honorable Court. Good morning. Good morning. Welcome, Counsel. Mr. Broccoletti, when you're ready. Thank you, Your Honor. May I reserve five minutes for rebuttal, please? Yes. Thank you. May it please the Court, my name is James Broccoletti from Norfolk. I'm pleased to be before the Court. I'd like to thank the Court for this opportunity to be able to argue this very important issue. I know it's difficult times, and we certainly do appreciate the Court's consideration, and we certainly do hope that the Court and everyone stays healthy and is safe in these times. With respect to the issues that are before the Court, obviously, it's a very straightforward appeal. On its face, it seems to be very simple, but it has multiple nuances and a lot of significant underlying issues with respect to it. Our position is very simply that the Supreme Court's decision in Kokesh has changed the law with respect to penalties and punishments with respect to double jeopardy provisions. I know with respect to that particular issue, both the government, as well as the District Court Judge Davis in his significant opinion, as well as the Sixth Circuit in Dyer, all take the position that the Supreme Court never took up this particular issue in terms of it being a criminal punishment, which then would be applicable to the double jeopardy issue to be raised to the Court today. Yes, Your Honor. Mr. Broccoletti, before you get into the substance of the argument, I want to ask a procedural question. And that is, why isn't this issue waived given the clause in the SEC consent judgment that were in your client acknowledged that there had been no promise of representation made with respect to any criminal liability that might attach, and that your client was in fact waiving any claim of double jeopardy based on the settlement proceeding? Your Honor, I think for several reasons as we cite in the brief and as we cited in the District Court in our reply brief. First of all, the District Court construed the Seventh Circuit's decision in Van Weyenberg in terms of the almost exact language that was included in that particular waiver. And the District Court found that that particular waiver and that particular language was not sufficient because it did not include future criminal prosecutions. But I think more substantively as well. Can I ask another follow-up? So what would that clause contemplate if not future criminal proceedings? I think the clause would contemplate just the actions that were pending at that particular time. But more importantly, Your Honor, I think that a defendant cannot waive a right knowingly, involuntarily, and intelligently when that right at that time was, to use the word, inchoate because of the Supreme Court's decision in Kokesh. Johnson v. Zerps, if I'm pronouncing that correctly, talks about that knowing and intelligent waiver. And at the time that Mr. Banks executed that waiver, the Kokesh decision had not been rendered. It was six months later. Can I interrupt? I mean, we enforce waivers all the time when defendants argue that there's been a change in the case law or a change in the legal landscape. I don't think that by itself is enough to warrant a different result here. And I'm still left with the question as to what impact, what import does this clause have if not contemplating future criminal proceedings? I mean, what benefit did the government have, if not receiving the benefit of not allowing this kind of a claim to go forward? Well, I think the benefit the government had was having a consent order executed and not having to take them out of the trial or having a burden of proof, having to establish anything with the defendant's consent to the entry of an order. So I think the benefit the government has with respect to the consent order is obvious from a practical standpoint. But to answer the court's question with respect to what that particular clause meant, the vagaries, as the court indicates by its own questions, the vagaries of that particular clause and the uncertainties that are contained within that clause, I think then put it into the Johnson v. Zerks analysis whereby the court has to determine that every presumption against waiver applies and the court looks at every reasonable inference. So if there would be an ambiguity in particular to that particular language in that clause, based upon the Supreme Court's decision, that this court should find against that particular waiver. I hope that answers the court's question. Turning back towards the merits of the particular case, when the court looks at, obviously, the Kokesh decision, and the court has studied that very carefully, it's true that it doesn't go towards the criminal punishment that we're advocating today. But in that particular context, that's not unusual because that issue was not before the court. And so an element of construction surely is that only those issues that are addressed before the court are going to then be ruled upon by the court. But Judge Davis's opinion takes it one step farther because in one of his footnotes, he talks about the oral argument. Yes, Your Honor. So if the issue wasn't before the Kokesh court, the issue of criminal penalty or even double jeopardy was not mentioned, how is it applicable here? Well, because I think that it changes the definitions and it expands the definitions and expands the elements of criminal punishment to include this particular case with this particular disgorgement. And if I could just go back for one second, I went back and I listened to Kokesh, the oral argument. In fact, I listened to it a couple of times. And what's significant about that is how many times the context of criminal prosecution does come up in the oral argument, specifically with respect to Judge Gorsuch. And there's a transcript, obviously, that's available. And for the court's benefit, I'll just quote that. They're talking about restitution. They're talking about equitable and disgorgement. And Justice Gorsuch says, this is on page 23, well, the same thing is true in the criminal context, right? I mean, we have criminal forfeiture where the money goes back to the government and sometimes it's distributed to victims. But we don't doubt that those are penal in nature. And then later on, on page 53, he's talking to the solicitor general and he's asking a question. Well, Ms. Goldenberg, when we get to the criminal context, this very same remedy of disgorgement of everything is often called a forfeiture. And it is a penalty, right? So why does it make a difference that we just happen to be in the civil context? So, obviously, that issue is alive and percolating, if you will, with respect to what the Supreme Court – yes, Your Honor. So is there any case that has concluded disgorgement is a criminal penalty that invokes the Double Jeopardy Clause, or would we be the first? No, Your Honor, you are writing on a clean slate. The Dyer Court, I suggest, is not precedential value for several particular reasons. First of all, Dyer dealt with a sentencing issue with relevant conduct. And whether or not these particular funds that Mr. Dyer had stolen and then disgorgement was applied to that – or, excuse me – disgorgement was applied to that with an applicable and a sentencing issue. And whether or not, from a sentencing guideline standpoint, that particular enhancement would apply. Completely different issue. Second of all, the charges were completely different. In Dyer, he dealt with tax evasion. He dealt with some other particular fraud. But not the securities issues that are at play in these particular counts in this particular indictment. And then lastly, the Court itself recognizes that. When the Court recognizes on page – one of the last pages of the opinion, page 9, and it says this is the Sixth Circuit. Even if SEC disgorgement were a criminal punishment, we would affirm the defendant's sentences for two additional reasons. And just the two reasons that I gave to the Court. So I suggest that Dyer is not controlling, nor does Dyer have any presidential value. And I think that Dyer reads Koketsch too narrowly in terms of the language that the Supreme Court uses. And I'm sure the Court has read Koketsch multiple times, as I'm sure my friend, Mr. Bassi, has as well. It's striking how many times the Court, Justice Sotomayor, uses the word punishment. Not only the word punishment, but she uses the word corporal punishment. Corporal punishment is obviously an effect of the criminal law resulting in imprisonment and or death, as well as other physical harm. But those words can't be taken lightly, and those words just cannot be discarded. And she cites multiple cases using the aspects of terms of punishment. And so for those particular reasons, we don't think that the Supreme Court went that far, had to go that far. For example, let me give the Court the jurisprudence with respect to double jeopardy. For years, we operated under the Blockbuster test. Blockburger, sorry, I apologize. Blockburger test. And then in 1990, the Court changed that seascape and went to a Grady v. Corbin analysis. Three years later, the Court changed again with respect to Dixon. And overruled Grady v. Corbin. So the Supreme Court is constantly in a state of flux with respect to this, struggling, trying to define what these particular terms would be. And in fact, Justice Gorsuch talks about that in the oral argument, again, where he said that the Court has been vexed for years to define criminal versus civil. So I think that under those contexts and under those terms, the mere fact that the Supreme Court did. Yes, Your Honor. Yes, sir. Can you talk about how, if we agree with your position, how this view would affect the ability of the SEC to pursue its mandate in the civil context? Because it strikes me that you're essentially eliminating a very substantial part of the SEC's arsenal in terms of trying to prevent these types of offenses, civil offenses, violations from going forward. Well, two things with respect to that, Your Honor. Number one, I appreciate the Court's question, and I certainly respect the Court's question. But with respect to a criminal prosecution in double jeopardy, I think that the SEC's enforcement actions take second place, if you will. But I think the SEC has multiple tools that are available to it. They have the civil fines. They have other aspects. Plus, in this particular circumstance, a criminal forfeiture could suffice, as Justice Gorsuch indicates in his questioning at the oral argument. A criminal forfeiture could suffice and have the exact same result as the SEC action that's in place. And with respect, I'd like to reserve the balance of my time for rebuttal. All right. Thank you, Mr. Broccoletti. Mr. Boss, how's it pronounced? It's Bossy, Your Honor. Andrew Bossy for the United States. Thank you, sir. And may it please the Court, the defendant in this case resolved a civil SEC complaint with a no-admit, no-deny settlement. The case was never tried, and the defendant never admitted any wrongdoing. That's the Arizona SEC enforcement action. As part of that settlement, he agreed to the equitable remedy of disgorgement, that he would pay back his ill-gotten gains, and this is a quote from the consent and the judgment, representing profits gained as a result of the conduct alleged in the complaint. His argument on appeal is that this civil remedy he agreed to in a civil action should be treated as a criminal punishment that bars the government from charging him in this case with securities fraud and unlawful sale of unregistered securities. And the premise of that is based on Kokesh, as we've just heard. Kokesh held that disgorgement was a civil penalty for purposes of the statute of limitations for civil fines and penalties. And the argument is that that should be read to transform sub salentio, disgorgement from this remedy, into a criminal punishment for jeopardy purposes. That argument has been rejected by all seven appellate courts that have taken up the question, both before and after Kokesh, and before and after the Supreme Court's 1990 decision in the Hudson case. And I take some issue with the Dyers obviously not controlling on the Fourth Circuit, but it's certainly persuasive. And the legal question in front of the Dyer court is the same legal question before your honors. That question is whether disgorgement- Yes, sir. Mr. Bossi, you kind of dive right into the merits of the argument here. But I asked your colleague a question about whether or not we even need to get to the merits, given the waiver that appears in the SEC agreement that resolved the civil charges. What is your position with respect to that? Yes, sir. The government's position, our first argument is waiver. And the defendant, when he made this consent, and when the consent was entered into the judgment, he explicitly waived his right to claim that the settlement is a jeopardy event. He was counseled throughout that civil enforcement proceeding, and he was counseled as to the consent that he entered. Paragraph 11 states that no promises were made with regard to any criminal liability that may have arisen or may arise from the facts underlying this action, and no immunity from any such criminal liability. And then came the waiver sentence. Defendant waives any claim of double jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. That waiver is abundantly clear. And the idea that the waiver somehow should not apply because there was no then pending criminal action would gut the waiver. It would be of no value to the government. Would the government bargain for it? Yes, sir. I thought your colleague's argument was twofold. Maybe he made reference to the fact that there was no pending criminal proceeding. But his point is as well that that waiver sentence makes no explicit reference to criminal proceedings in the general sense. And in that sense, it's not clear enough. What's your view about that? To be fair, the district judge had something of the same statement in getting past the waiver and to the merits of the argument. But, Your Honors, double jeopardy only applies in the criminal context. And so where there's a waiver that includes the words double jeopardy, as a definitional matter, it can only apply in a future criminal proceeding. And so it's criminal by definition. It's also forward-looking, necessarily. Yes, Judge Thacker. Yes, but I think the argument is if there is some ambiguity, and we have to discuss it this much, that the presumption is against waiver in matters of double jeopardy. What's your response to that? I understand the argument, Your Honor, but I don't think there's ambiguity. The waiver is abundantly clear. It talks about any double jeopardy claim, and it talks about future criminal proceedings. And so that's where we are. Yes, Your Honor. But do you agree, then, that if I think it's ambiguous for some reason, that there's a presumption against waiver in this instance? Your Honor, the Zerps case in the Supreme Court does suggest that if there's an ambiguity in a criminal waiver, that it is essentially held against the government. But here I don't think that – it would be hard to say what could be more clear, what the government could have asked for that would have been more clear in that paragraph. Also, I want to note that the waiver is forward-looking. The argument that Kokesh somehow changed it, what the defendant is arguing – yes, ma'am. Because the government – you're saying the government wouldn't have put the word criminal in there anywhere because this was not a criminal matter at that time? Well, more so, Your Honor, because any double jeopardy claim can only be brought in a criminal matter. And so what the waiver is saying is that he is not going to argue in a future criminal matter that this settlement he signed is a jeopardy event. That's the only applicable place this waiver would have any effect. And in the Johnson case – and this wasn't cited in our brief, I apologize – but Judge Motz's decision in the Johnson case, which is 410 F. 3rd 137, states that the possibility of a favorable change in the law occurring after – this is in the context of a guilty plea – occurring after a guilty plea is one of the normal risks that accompanies a guilty plea. In other words, you don't get to undo a waiver, even a significant one, just because the law somehow changes in your favor afterwards. But the government – the gain the government got from that waiver is that it wasn't going to face this argument in a later criminal proceeding, regardless of whether it's a good argument or a bad argument. The argument was waived ad venitio. And so that's the government's position on the waiver. I'd note that this Court held in an unpublished – the Chung case, which is cited in our brief – a waiver that was much less broad and much less explicit was held to waive a double jeopardy claim and a subsequent follow-on criminal proceeding. As far as the Van Weyenberg case, I don't have the full paragraph from Van Weyenberg. Some of the language is the same. But in our paragraph, paragraph 11, before the waiver sentence, is a sentence talking about criminal proceedings that may arise, necessarily forward-looking. And so that's the government's argument on the waiver. Unless the Court has questions, I can – on waiver, I can talk more about COCASH. Mr. Balcy, I do have a question about – you well understand that double jeopardy is quite an important protection in the criminal setting, correct? It's immensely important, yes, sir, Your Honor. And so while you're right that this agreement was not in the ambience of a criminal proceeding, but the waiver you're urging us to enforce is – has a great impact on criminal proceedings, correct? That's correct, Your Honor. So the question is, at the time the law stood, it's a matter of what the banks thought he was giving up, which was very little because it was never thought of as a civil penalty at all. So to put that there was – really meant nothing until COCASH came along and said, even though it was a statute of limitations, it says it's a civil penalty. And penalties are something that may be argued in court in a criminal court. Whether it's prevailing or not is not the issue. The question is, we're allowing that at the time as the way the law stood then. What was at stake? And basically nothing. Okay, fine. That's what the law says. It's, you know, it's of no moment, but it becomes of a moment. That's the question. So don't we have to look at that in that context, whether or not we're going to enforce that waiver, in terms of what impact it may have on a criminal proceeding as we are now? Don't you think that that's something that you can't just say, well, this was in a basket of civil. And while you're right, double jeopardy is only raised in a criminal setting, but this has an impact on that if we say this waiver is knowing and voluntary, isn't it? Sir, I have a couple of responses to that argument, and one of them is the defendant at the time that he entered this consent knew that he was the subject of an FBI investigation. And so the idea that a jeopardy waiver could actually have some teeth was obvious at that time. He'd been for two years a subject at that point of an FBI investigation. The second point is that what the defendant agreed when he made this waiver, he agreed that I have a potential double jeopardy claim, whether it's weak or it's strong. I can always argue double jeopardy based on something that happened in the past, in this case the settlement, the civil settlement. What he agreed is that I am not going to do that. It wasn't contingent on the strength of the claim. And this Court's jurisprudence is clear that when the law changes after a waiver, it doesn't vitiate the waiver. It's still applicable as it was on the day it was made. And so I don't know if I answered Your Honor's questions, but that's the government's position on that portion. Thank you. Before I dive into talking too much about COCASH, and I'm mindful of my time, I want to make a broader point about the breadth of what the defendant is arguing here. Because disgorgement is an equitable civil remedy. It's not even a fine. It's not even a civil fine, much less a civil in-rem forfeiture, much less a criminal forfeiture. And criminal forfeiture, by the way, is a whole different animal than civil disgorgement. Criminal forfeiture is imposed following a criminal conviction, and it reaches far broader than disgorgement. It can get into facilitating property, for example, seizures of homes that are used to facilitate drug dealing. It's not even in the same ballpark. But even looking at civil fines, imagine a civil fine, for example, in the intellectual property realm where it's levied per violation. That has nothing to do with the defendant's own profits. It's closer to the line of what's punitive. And so what the defendant is arguing here is that this equitable remedy is transformed into a criminal punishment. Your Honors, if that is true, then it would be the rare civil fine or the rare civil in-rem proceeding that would not also be a criminal punishment. That's exactly what the Supreme Court was trying to avoid in Hudson. It was correcting the earlier decision in Halper which led to this flood of double jeopardy claims that all these civil things, civil fines and civil penalties, were actually jeopardy events. And the court in Hudson said, no, that's not the case. Hudson itself is a great example because in Hudson, the court was dealing with a civil fine closer to the line of criminal than the civil forfeiture proceeding, I'm sorry, the civil disgorgement proceeding that we have here. And in Hudson, the court went through the entire analysis, the same analysis that the other courts that we've cited in our brief have done in the context of a disgorgement. And the Hudson court found quite easily that that civil fine structure was not punitive in the sense of criminal punishment, in the sense of a jeopardy event. And so that's the backdrop to this argument. The other rep issue here is that the SEC has civil enforcement authority, but no criminal enforcement authority. Congress set up in the 33 and the 34 Act this dual jurisdiction, dual enforcement mechanism, civil on one hand and criminal on the other. And if the defendant's argument is correct, then decades of practice in the securities enforcement realm are going to be undone. Because one of the main remedies that the SEC has, and this was put into law as far as its power to enforce equitable remedies in the Sarbanes-Oxley Act, one of the main remedies it has is to force companies and individuals that it otherwise enjoins from future violations, it can force them to give back their profits. Yes, Your Honor. Your colleague sort of spoke to this at the very end of his opening argument. And his point was, well, that's all well and good, but we're dealing with a criminal proceeding versus the ability to enforce a civil liability. And criminal proceedings are obviously much more important as a matter of, in fact. And so the solution for the government should be simply to focus on the criminal proceedings first and let those take their course and then proceed civilly if appropriate. Why isn't that the answer here? Sir, I think that as a matter of practice, it's usually, I believe, I'm not a SEC attorney, but I believe it's usually it runs in the opposite direction. The SEC is often involved on the front end because they get a tip about something going on that's improper. And then they move to enjoin that action. So they stop it from happening. And as part of that, as part of the injunctive remedies, ancillary to the injunctive remedies in an SEC enforcement action, a district court can order the disgorgement of ill-gotten gains. It's often the fact that the criminal prosecution then follows. As a matter of fact, the 33 and 34 Act specifically say that the SEC, I'm sorry, the 34 Act says the SEC that can transmit information to the prosecuting U.S. Attorney's Office or DOJ for a follow-on criminal enforcement. And so while it's sometimes the case that a criminal enforcement happens first, it usually starts with the SEC and then ends up in the criminal realm. And not always. Many of them don't. But that, excuse me, Mr. Bossi, but that doesn't mean that that's the way it needs to proceed as a matter of course going forward. And at least half of that process that you just described that is obtaining an injunction is still something that the SEC could continue to do and simply defer any imposition of civil sanctions until after the criminal proceedings are completed. That may not be the most efficient way to proceed, but it would seem to resolve the issue and at the same time protect defendants from being, as from the defendant's point of view, unlawfully criminally punished. Your Honor, obviously because it's our position, I don't agree that this is anything like a criminal punishment. But I'd say as to the point as far as which goes first, civil versus criminal, is that this is the regime that Congress set up in 1933 and 1934. And it's the regime that they've valorized by enacting amendments throughout the time, especially in the Penny Stock Reform Act and in the Sarbanes-Oxley Act. They're operating in the shadow of this is the regulatory and criminal parallel proceedings regime that we've set up. And so this is how Congress essentially expects it to go. And if it were to be otherwise, it ought to be Congress that makes that decision in the government's view rather than the courts. Mr. Bossert. Yes, sir. It was the government that introduced the criminal aspect here first because you drafted the waiver and you mentioned words like double jeopardy, didn't you? No, sir, that's an SEC waiver. I'm sorry. I mean, it's the government. I mean, it's the government.  I mean, the government. I mean, the government. And I'm not going to say you. I mean, to me, you represent the government. Obviously, you're here in the prosecution. But the government introduced that criminal. Well, why should there be a clean slate? If that's totally civil and what you're doing is totally criminal, why would you have them waive something that may impact a criminal right or potential defense? Well, should it be just this is disgorgement, period. And I don't know what else you would waive. You say, well, you're not going to sue the government to get the money back. But why would you introduce it unless you thought that it might be some glimmer of something you could keep him away from in the criminal setting? You follow my question? I think I do, Your Honor. And let me try to respond to it. And you'll correct me if my response shows I didn't understand the question. But this is a parallel civil and criminal regime. So the SEC is focused in the civil enforcement side on stopping these actions and then on getting back the profits that were unlawfully taken. The government has its own interest where appropriate in criminally prosecuting securities law violations. Those criminal prosecutions can lead to jail time, which the civil enforcement proceedings cannot. And as far as how this was drafted, I'm not aware of how it was drafted or who bargained for what. All I know is that that's the final product that came about between the defendant and the SEC. And the defendant got a number of benefits. You're relying on that product for the waiver. Yes, sir. Everything in your argument for waiver is from that product. So you have to own it today in that regard. What I'm asking you is why is it fair to have a potential criminal defense foreclosed in that venue? If it's all civil, then it's a disgorgement. Why would you say, oh, I'm disgorging these funds. And by the way, I want you to weigh that in case this becomes a criminal, that you give up an important constitutional question. Right. But your honor, and I apologize, but that's exactly what the government is asking him to do because of the possibility of a future criminal prosecution. The government doesn't want to have the fact that the defendant had to give back, by the way, only his own unlawful profits in this case. He wasn't further penalized. He had to give back his unlawful profits. The government is saying that cannot be an immunization from future criminal prosecution for the bad acts that he took. Assuming the government brings a criminal case and can prove that these crimes were committed. That's not up to the government. That's up to our third branch of government in terms of interpreting the law. We don't write the law, but we interpret it in that sense. I mean, the government doesn't determine whether it is. That's why right now you're arguing for a waiver. It's up to this court to determine whether or not, in fact, it is a waiver. So, again, it's kind of interesting that you hope to foreclose that you can still prosecute. It just means that they may have a defense. I mean, suppose you put in a waiver to, you know, you agree that you will not call witnesses if you are a defendant, if you are prosecuting. You think you could do that? Would that be enforceable? Well, I don't know if that would be enforceable. Well, that's just a hypothetical. If you said, I waive the right that if I'm prosecuted, I will not bring any witnesses to testify in their defenses. Could you do that? I have no idea whether that would ever be sought by the government. I can't imagine it would be. I don't know. The world is changing every day. But on the same issue, you're saying a waiver of a very important constitutional protection. And the court, our hands are shortened from even, we have to enforce it. Isn't that what you're telling us? That's what I'm asking as far as the correct interpretation of that consent agreement. Your Honor, the Supreme Court has held in much more serious cases that serious criminal waivers can be enforced, including in Ricketts, which ended up, the waiver ended up leading to a retrial and a death penalty conviction. So here we're talking about the securities context, much less drastic, if you will. I see that I'm over time, and I apologize for that, but I do thank you all. Unless anyone has further questions, we'd ask that the court's order below be affirmed. Thank you, Mr. Bossert. Mr. Broccoletti, you have reserved some time. Yes, Your Honor. Thank you. First of all, with respect to my good friend's comments that disgorgement equals profits, that is not accurate. The courts have held, as well as the Kokesh Court and all the courts, disgorgement goes far beyond profits. Disgorgement talks about righting a public wrong, not an individual wrong. And in this particular case, there was a civil penalty of approximately $4.5 million, as well as the disgorgement of $4.5 million. As the district court's order in Arizona sets forth, the total amount that the defendant bank received from this endeavor was that $4.5 million. So in essence, they have doubled the amount of the money that he has now been ordered to give back. And that's why it becomes a penalty. And that's why it becomes a punishment. And that's why it becomes a successive criminal punishment in the context of double jeopardy, because it's not designed to put the investors back into the status quo. And in fact, disgorgement, the money doesn't even go to the investors. The money goes either into the court or into the Treasury. And then it's up to the court or the Treasury to determine how to divvy up those funds. Maybe the investors get some of it. Maybe the investors don't. Maybe the government keeps all of it. So under those circumstances, to talk about disgorgement being civil and in the context of going solely to that investor, that is not accurate. And again, going back to Hudson, as counsel was arguing, I'd ask this court to consider the case of Liu, L-I-U versus SEC, which is now pending in the United States Supreme Court. That's docket number 18-1501. The Supreme Court heard oral argument in March. The decision is suspected. That case is supposed to answer footnote three in Kokesh, which is whether or not there is any statutory authority for the court to even order disgorgement. That decision obviously will impact the Hudson's analysis because step one of the Hudson's analysis is what does the statute talk about, criminal versus civil. So that particular decision can greatly impact what the circumstances may be. If the court does not have any further questions, I'd like to thank the court and was really looking forward to coming to Huntington, West Virginia. Judge Thacker, I'm sorry I didn't make it this time, but hopefully there's another time. Thank you, counsel. Thank you both. Please accept our apologies. We can't have our normal tradition of coming down to greet you. But nonetheless, we do greet you and we thank you so much for your argument. And we appreciate that and your fine arguments and we wish you stay safe and be well. Take care. Thank you, Your Honor. Thank you. Thank you, Your Honor.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker